IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 3:15CR102–HEH |
| TRAMAINE STANDBERRY, ) | |
| JOSHUA N. WRIGHT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Defendants' Motions to Dismiss Counts Two and Five)

The Defendants, Tramaine Standberry ("Standberry") and Joshua N. Wright ("Wright"), were indicted by a federal grand jury for robbery affecting commerce and possession of a firearm in furtherance of a crime of violence. Specifically, Counts One, Three, and Four of the Superseding Indictment charge the Defendants with robbery affecting commerce. Counts Two and Five charge them with possessing a firearm in furtherance of two of those robberies. Presently before the Court are the Defendants' separately filed, but parallel, Motions to Dismiss Counts Two and Five of the Superseding Indictment (ECF Nos. 30, 32, hereinafter "Def. Standberry's Mot. Dismiss"). The Defendants maintain that these counts fail to plead a prosecutable offense.[1]

---

[1] As presented, the Defendants wage a facial challenge to Counts Two and Five which requires no factual findings. It is therefore properly raised by pretrial motion since it can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(2); *see United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012).

The Defendants' core contention is that the charge of robbery affecting commerce, in violation of 18 U.S.C. § 1951(a),[2] fails to qualify categorically as a predicate crime of violence under the black letter language of 18 U.S.C. § 924(c).[3] Section 924(c) provides an additional period of imprisonment for using or carrying a firearm in furtherance of a crime of violence. The reasoning underlying the Defendants' argument is dependent on their assumption that the sufficiency of an indictment to state a crime of violence is reviewable under a categorical analysis framework. Under this narrowly focused lens, the Court's analysis is both informed and constrained by the elements of the underlying statute. This approach requires the Court to disregard the allegations in the Superseding Indictment that a firearm was brandished and that property was taken by means of actual and threatened force, violence, and fear of injury. (Superseding Indictment 2, ECF No.

---

[2] The statutory language of 18 U.S.C. § 1951(b)(1) reads in pertinent part:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession . . . .

[3] The statutory language of 18 U.S.C. § 924(c)(1)(A) reads in pertinent part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [receive an additional period of confinement] . . . .

18 U.S.C. § 924(c)(3) reads in pertinent part:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and--
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

2

24.) It is further alleged that in at least one of these three robberies, a firearm was actually discharged. (*Id.*)

Before turning to the substance of the Defendants' argument, it is important to clarify the origin and purpose of the categorical analysis framework deployed by the Defendants to assail the firearm counts in the Superseding Indictment. Although both of the Defendants and the Government urge the Court to employ a categorical analysis in evaluating the firearm charges in the Superseding Indictment, this approach has been rarely utilized outside its original intended purpose. Its value and utility are questionable in the present context where the violent nature of the alleged robberies is readily apparent from the face of the Superseding Indictment.

As the United States Supreme Court explained in detail in *Taylor v. United States*, 495 U.S. 575 (1990), the concepts of categorical and modified categorical analysis are a product of the Armed Career Criminal Act, as periodically amended and readopted. The Act provided for enhanced punishment for persons with three previous convictions for "a violent felony or a serious drug offense." *Id.* at 582 (citing 18 U.S.C. § 924(e)(1)). In discussing application of the enhancements provided in 18 U.S.C. § 924, the Supreme Court concluded that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* at 600. The Court in *Taylor* went further to explain the rationale underlying the restrictive scope of the categorical analysis, particularly in light of the limited record before the sentencing court.

> If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history.
>
> . . . [T]he practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of [a crime of violence], the trial court would have to determine what that conduct was. In some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted [a crime of violence].

*Id.* at 601.

The Court in *Taylor* concluded that the only plausible interpretation of the enhancement provisions of the Armed Career Criminal Act is that "it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. The analytical construct evolving from *Taylor* has been uniformly applied by federal courts in determining whether sentencing enhancement statutes apply to qualifying offenses of conviction.

More recently, the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the court found the so-called "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), to violate the Due Process Clause, the Court invoked the teachings of *Taylor* to reiterate the office of the categorical approach.

> *Taylor* explained that the relevant part of the Armed Career Criminal Act refers to a person who . . . has three previous convictions for – not a person who has committed – three previous violent felonies or drug offenses. This emphasis on convictions indicates that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions. *Taylor* also pointed out the utter impracticability of

4

> requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction. For example, if the original conviction rested on a guilty plea, no record of the underlying facts may be available. [T]he only plausible interpretation of the law, therefore, requires use of the categorical approach.

*Johnson*, 135 S. Ct. at 2562 (alterations in original) (internal quotation marks and citations omitted).[4]

Cases in which the categorical approach has been utilized outside the sentencing contexts are sparse.[5] In the vast majority of cases, this one dimensional analytical construct is used by sentencing courts conducting a cold record review of a prior conviction to determine whether its elements square with the definition of "crime of violence" articulated in § 924(e)(3), the Armed Career Criminal Act. Unlike the retrospective analysis conducted by sentencing courts, trial courts have the benefit of viewing the evidence as it unfolds. With some reservation, this Court will bow to the wishes of the parties and apply the categorical approach.

Turning to the controversy at hand, the Defendants maintain that the language of Counts Two and Five of the Superseding Indictment fail to allege a violation of 18 U.S.C. § 924(c), which provides for an additional period of confinement for use of a firearm in

---

[4] *See also* Justice Scalia's comments in *Johnson v. United States*, 559 U.S. 133, 144 (2010).
[5] The Fourth Circuit has used the categorical approach only twice outside the sentencing context in a published opinion. *See United States v. Fuertes*, __ F.3d __, 2015 WL 4910113 (4th Cir. Aug. 18, 2015); *United States v. Aragon*, 983 F.2d 1306, 1311–15 (4th Cir. 1993) (affirming district court's "implicit holding" that determination of whether offense constitutes crime of violence is question of law inappropriate for submission to jury). As in the immediate case, neither party in *Fuertes* urged the trial or appellate court to do otherwise. However, it is noteworthy that the Fourth Circuit relied exclusively on cases where courts employed the categorical approach to evaluate the nature of a prior conviction to determine whether a sentencing enhancement applied. *See also United States v. McGuire*, 706 F.3d 1333, 1336–37 (11th Cir. 2013); *Aragon*, 983 F.2d at 1311–15 (relying almost exclusively on cases involving sentencing for purposes of categorical analysis).

connection with a crime of violence. Central to their argument is the definition of the term "crime of violence" contained in § 924(c)(3)(A). This section states in pertinent part that "the term 'crime of violence' means an offense that is a felony and – has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[6] 18 U.S.C. § 924(c)(3)(A). Obviously, Hobbs Act robbery is a felony, but does it necessarily require physical force?

Relying principally on *Johnson v. United States*, 559 U.S. 133 (2010), the Defendants argue that "[u]nder the categorical approach, an offense qualifies as a crime of violence only if a necessary element of the offense includes the use, attempted use, or threatened use of violent physical force." (Def. Standberry's Mot. Dismiss 5 (emphasis omitted).) In *Johnson*, the court interpreted the phrase "physical force" in the Armed Career Criminal Act's "force clause" to mean violent force. 559 U.S. at 140. The court concluded that "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* Defendants argue that "[h]ere, the Hobbs Act can be violated by putting someone in fear of future injury to his person or property. . . . Accordingly, they maintain that violent physical force is not a necessary element of Hobbs Act robbery, and the offense fails to qualify as a crime of violence under the categorical approach." (Def. Standberry's Mot. Dismiss 5.)

---

[6] The Defendants also challenge the alternative definition of a "crime of violence" contained in § 924(c)(3)(B), the so-called "residual clause," discussed *infra*.

6

This aspect of the Defendants' argument finds sustenance in the underpinnings of the Fourth Circuit's holding in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012). In *Torres-Miguel*, the Fourth Circuit reviewed a district court's finding that "the California threat conviction categorically constituted a crime of violence justifying a sentencing enhancement under the United States Sentencing Guidelines . . . . *See* U.S. Guidelines Manual § 2L1.2(b)(1)(A)(ii) (2011) [(providing for increased guidelines for previously deported person with certain prior felony convictions unlawfully reentering the United States)]." *Id.* at 166. The court concluded that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of a crime of violence." *Id.* at 168.

Applying the teachings of *Torres-Miguel*, the Defendants focus on the definition of robbery in 18 U.S.C. § 1951(b)(1), which reads in pertinent part, "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future." 18 U.S.C. § 1951(b)(1). The Defendants emphasize that under the categorical approach, the Court must determine whether a statute qualifies as a crime of violence by evaluating the most innocent conduct criminalized by its language. *Torres-Miguel*, 701 F.3d at 167. In line with this reasoning, the Defendants argue that "fear of injury," viewed in isolation, does not rise to the requisite level of violent force. This argument, however, discounts much of the operative language of 18 U.S.C. § 1951(b)(1).

The term "robbery" itself, as derived from the common law, imports the notion of a forcible dispossession of property. *See Patterson v. Commonwealth*, 222 Va. 653, 664

7

(1981). As the government emphasizes in its response, "[u]nder *Johnson*, one who commits Hobbs Act robbery by 'fear of injury' necessarily commits it by 'fear of physical force' and thereby commits a crime that 'has as an element the use, attempted use, or threatened use of physical force against the property or person of another.'" (Gov't's Resp. Opp'n Defs.' Mot. Dismiss 7–8, ECF No. 38.) Key to the immediate analysis is the necessity for a taking, from another individual, against their will, property by means of actual or threatened force or violence—or fear of injury. Fear is the operative element facilitating the taking. Under § 1951(b), robbery can be effectuated by either a threat to inflict harm in the future or a use of force in the present. Under a commonsense analysis, any act or threatened act which engenders a fear of injury implicates force and potential violence. *See United States v. Castleman*, 134 S. Ct. 1405, 1414–15 (2014); *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). The phrase "fear of injury" must be read and construed in context with the other language contained in 18 U.S.C. § 1951(b)(1). *See Johnson*, 559 U.S. at 139–40.

As the government notes in its response, no other reviewing court has had difficulty finding that the language of 18 U.S.C. § 1951(b)(1) describes a crime of violence.[7] In fact, as the government further points out, the First Circuit concluded in *United States v. Turner* that "[t]he overwhelming weight of authority holds that a Hobbs Act conspiracy is a 'crime of violence' for the purposes of Section 924(c)." 501 F.3d 59, 67 (1st Cir. 2007). Significantly, the First Circuit cited *United States v. Phan*, 121 F.3d

---

[7] A number of courts finding Hobbs Act robbery to be a crime of violence have failed to identify which clause of § 924(c) was used as their standard of measure.

8

149, 153 n.7 (4th Cir. 1997), in bolstering its conclusion. In *Phan*, the Fourth Circuit found that conspiracy to commit robbery constitutes "a separate crime of violence providing its own predicate" for Hobbs Act purposes. *Id.* at 152–53.

The second facet of the Defendants' challenge is that simply "putting another in fear of injury does not require an *intentional threat* of violent force" necessary under § 924(c)(3)(A), the so-called force clause.[8] (Def. Standberry's Reply Gov't's Resp. Mot. Dismiss 2, ECF No. 40.) Drawing from *Garcia v. Gonzales*, 455 F.3d 465 (4th Cir. 2006), Defendants argue that only if an element requires an "*intentional* employment of physical force [or threat of physical force]" can an offense constitute a crime of violence under § 924(c)(3)(A). (Def. Standberry's Mot. Dismiss 9 (alteration in original) (citing *Garcia*, 455 F.3d at 468).) They contend that under *Garcia* this essential mens rea element is critical. (Def. Standberry's Mot. Dismiss 9–11.) Again, focusing exclusively on the phrase "fear of injury," the Defendants contend that this element does not necessarily require an intentional threat. The argument envisions a somewhat implausible paradigm where a defendant unlawfully obtains another person's property against their will by unintentionally placing the victim in fear of injury.[9]

It is important from the inception of the analysis to recognize that Counts One, Three, and Four of the Superseding Indictment charge robbery affecting commerce. The

---

[8] As previously mentioned, § 924(c)(3)(A) is commonly referred to as the "force clause"; § 924(c)(3)(B) is described as the "residual clause."

[9] Based on this same deficiency, the Defendants maintain that the federal bank robbery statute fails to qualify as well as a crime of violence. (Def. Standberry's Reply Gov't's Resp. Mot. Dismiss 12–13.)

9

element of fear or intimidation required to support a robbery conviction in the Fourth Circuit is measured by an objective standard. In other words, the Defendants' acts and threatened acts are assessed from the perspective of an ordinary reasonable person. *United States v. Wagstaff*, 865 F.2d 626, 627–28 (4th Cir. 1989). The words and actions of the defendant must be "reasonably calculated to produce fear." *Id.* (quoting *United States v. Amos*, 566 F.2d 899, 901 (4th Cir. 1977); *United States v. Harris*, 530 F.2d 576, 579 (4th Cir. 1976)). In addition, to constitute robbery, the requisite taking must be against the *will* of the victim and accompanied by words or actions objectively calculated to inject fear of injury. Mere unintentional acts or negligence fall short of robbery as a matter of law. *See United States v. Woodrup*, 86 F.3d 359, 363 (4th Cir. 1996).

Although the bank robbery statute, 18 U.S.C. § 2113(a), uses different phraseology to describe the crime of robbery, its import is the same. The bank robbery statute uses the language "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). The word "intimidation" implies a threat calculated to place the victim in fear. *Virginia v. Black*, 538 U.S. 343, 360 (2003). The Merriam-Webster Dictionary defines "intimidate" as "to make (someone) afraid" or "to make timid or fearful." *http://www.Merriam-Webster.com/dictionary/intimidate* (last visited October 9, 2015). Therefore, case law interpreting the element of intimidation under the bank robbery statute is instructive here.

In *Woodrup, supra*, the Fourth Circuit dispensed with the argument that the bank robbery statute required proof that the defendant actually intended to intimidate the victim. "The statute merely requires that a theft of money from a bank be 'by force or

10

violence, or by intimidation' in order to constitute robbery; nothing in the statute even remotely suggests that the defendant must have intended to intimidate." *Woodrup*, 86 F.3d at 364; *see also United States v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008). Obviously, the taking of personal property from another against their will by means of actual or threatened force, or violence or fear of injury, immediate or future, entails a higher degree of intent than negligent or merely accidental conduct.

This Court will therefore join other courts in finding that Hobbs Act robbery contains as one of its elements the actual, attempted, or threatened use of physical force against the person or property of another, thereby constituting a crime of violence under § 924(c)(3)(A). *See, e.g., United States v. Farmer*, 73 F.3d 836, 841–42 (8th Cir. 1996); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *United States v. Melgar-Cabrera*, No. CR 09-2962 WJ, slip op. at 13 (D.N.M. Aug. 24, 2015); *see also United States v. Morris*, 247 F.3d 1080, 1084 (10th Cir. 2001); *United States v. Welton*, 387 F. App'x 189, 191 (3d Cir. 2010) (per curiam) (unpublished).

There is also a plausible argument, not raised by the parties, that the Hobbs Act robbery statute is divisible, necessitating application of the "modified categorical approach," which would widen the scope of inquiry. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). "[C]rimes are divisible only if they set out elements in the alternative and thus create multiple versions of the crime." *Omargharib v. Holder*, 775 F.3d 192, 197 (4th Cir. 2014) (internal quotation marks and citation omitted). The statute, 18 U.S.C. § 1951(a), the sole navigational aid under the categorical approach, provides two distinct methods by which the crime can be committed—robbery or

11

extortion. Hence, it is arguably divisible. *See United States v. Mackie*, 2015 WL 5732554, *2–3 (W.D.N.C. Sept. 30, 2015).

Under the modified categorical approach, "courts may look beyond the statutory text and consult a limited set of documents in the record" to determine the nature of the crime charged. *Omargharib*, 775 F.3d at 198. Those documents may include the indictment. *See Johnson*, 130 S. Ct. at 1273.

The Superseding Indictment clearly alleges that the robberies described in Counts One and Four were perpetrated not only by brandishing a firearm, but also actual and threatened force, violence, and fear of injury, immediate and future. (Superseding Indictment 2–3.) Moreover, with respect to the robbery described in Count One, Count Two—the related firearms count—alleges that the firearm was not only brandished, but discharged. The allegations contained in the Superseding Indictment are more than adequate to satisfy the definition of "crime of violence" contained in § 924(c)(3)(A).

On an alternative front, the Defendants and the government have differing viewpoints on the viability of § 924(c)(3)(B), the so-called "residual clause," in the wake of *Johnson*. In *Johnson*, the Supreme Court struck down the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), as prohibitively vague and violative of due process. *Johnson*, 135 S. Ct. at 2563. The residual clauses of both § 924(c)(3)(B) and § 924(e)(2)(B) contain problematic risk assessments. The Supreme Court in *Johnson* concluded that "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime." *Id.* at 2557. Speaking for the court in *Johnson*, Justice Scalia found the analysis unworkably abstract, particularly under the categorical

approach, because the residual clause requires application of "the 'serious potential risk' standard to an idealized ordinary case of the crime." *Id.* at 2561. The court in *Johnson* noted, "[b]ecause 'the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect,' this abstract inquiry offers significantly less predictability than one '[t]hat deals with the actual, not the imaginary condition other than the facts.'" *Id.* (second alteration in original) (quoting *Int'l Harvester Co. of Am. v. Kentucky*, 234 U.S. 216, 223 (1914)).

Section 924(c)(3)(A), discussed above, substantially tracks the language of subsection (i) of the Armed Career Criminal Act's definition of crime of violence. The Act's statutory cohort, subsection (ii) encompasses a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

While the Supreme Court avoided a specific finding that the "serious potential risk" facet of subsection (ii) of § 924(e)(2)(B) was fatally vague in isolation, it was critical of its shapeless uncertainty. *Johnson*, 135 S. Ct. at 2560. Given the Court's finding that Hobbs Act robbery qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A), it will decline to venture onto the less firm terrain of § 924(c)(3)(B).

Based on the foregoing analysis, the Defendants' Motions to Dismiss will be denied.

14

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: October 9, 2015
Richmond, Virginia

14